1 | Constantino Basile

2 | 10630 Moorpark St. #202

3 | N. Hollywood Ca. 91602

4 | Tel: (213) 304-7965

5 | constantino.basile@gmail.coom

6 |

7 | Attorney for Plaintiff

8 | **CONSTANTINO BASILE**

9 | **PLAINTIFF PRO SE**

*I/S*
*U*

10 |

11 | UNITED STATES DISTRICT COURT

12 | CENTRAL DISTRICT, WESTERN DIVISION

13 |

14 |

15 | **CONSTANTINO BASILE**, an individual

16 | Plaintiff,

17 |

18 | v.

19 |

20 | **SONY PICTURES ENTERTAINMENT**,

21 | **INC.**, a Delaware corporation; **AMBLIN**

22 | **ENTERTAINMENT, INC.**, a Delaware

23 | corporation; **MICHAEL ANGELO**

24 | **SOCCIO**, an individual; **ETAN COHEN**, an

25 | individual; and **JOHN/JANE DOES 1**

26 | **THROUGH 100**, inclusive,

| Defendant(s)

Case No:

**CV14 - 4264** SVW-AGR

**COMPLAINT FOR:**

**(1) COPYRIGHT INFRINGEMENT**

FILED
CLERK, U.S. DISTRICT COURT
JUN - 3 2014
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

PAID
- 3 2014
Clerk, US District Court
COURT 4612

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND A DEMAND FOR A JURY TRIAL.**

Plaintiff complains and for causes of action alleges as follows:

### FIRST CAUSE OF ACTION
**(for copyright infringement)**

#### I.

Plaintiff, Constantino Basile, is a resident of California and is the legal and beneficial federal copyright claimant, owner, and author of certain intellectual property, to wit screenplay shorts entitled, " The World of Jupiter / Crisis on Jupiter ", which were submitted as assignments to The Los Angeles Film School via email on or around September 8, 2011 and September 18, 2011, therefore were copyrighted as Plaintiff's intellectual property and have since been registered with the Writer's Guild of America and copyrighted with the United States Copyright Office, U.S. Copyright Registration # PAU3695779.

#### II.

Defendant, Sony Pictures Entertainment, Inc., upon information and belief, is and at all times mentioned was a Corporation organized under the existing laws of State of Delaware, with principal offices located at, 10202 W. Washington Blvd., in the city of Culver City, County of Los Angeles, State of California.

#### III.

Defendant, Amblin Entertainment, Inc., upon information and belief, is and at all times mentioned was a Corporation organized under the existing laws of the state of California with

1  the principal offices located at 100 Universal City Plaza, in the city of Universal City, County of

2  Los Angeles, State of California.

3

4                                           **IV.**

5          Defendant, Etan Cohen, upon information and belief, is and at all times material herein

6  was one of the writers working on MIB3. Etan Cohen, upon information and belief, has been at

7  all times, a citizen and resident of the County of Los Angeles, State of California.

8

9                                           **V.**

10         Defendant, Michael Angelo Soccio, upon information and belief, is and at all times

11 material herein was one of the writers working on MIB3. Michael Angelo Soccio, upon

12 information and belief, has been at all relevant times, a citizen and resident of the County of Los

13 Angeles, State of California.

14

15                                          **VI.**

16         Defendants, John/Jane Does 1 through 100 ( collectively the " Doe Defendants"), are

17 sued herein under fictitious names for the reason that their true names and identities are presently

18 unknown to Plaintiff except that they are connected in some manner with the named

19 Defendant(s) and/or were the agents, principals, partners, officers, directors, servants,

20 employees, employers, representatives, co-venturers, associates, consultants, vendors, suppliers,

21 manufacturers, subcontractors, contractors, sureties, insurers, owners, lessees, and/or licensors of

22 the named Defendant(s) and/or were in some manner responsible for the injuries and/or damages

23 to Plaintiff and/or conducted some activity or acities in a negligent manner which was a

24 proximate cause of injuries and/or damages to Plaintiff and/or were in some manner related to

25 the named Defendant(s), and Plaintiff prays for leave to certify their true names, identities,

26 capacities, activities and/or responsibilities when the same are ascertained.

27

28

**VII.**

Plaintiff is informed and believes and thereon alleges that, at all herein as mentioned, each of the Defendant(s) sued herein was the agent and employee of each of the remaining Defendant(s) and was at all times acting within the purpose and scope of such agency and employment.

**VIII.**

On or around 9-8-11 and 9-18-11, Plaintiff originated, created, and/or otherwise developed literary and artistic works entitled, " The World of Jupiter ", and " Crisis on Jupiter ", for submission as assignments to The Los Angeles Film School. These works consisted of a short story creation myth and a power point with short story synopsis, character descriptions and picture suggestions of what the characters should look like. These assignments were submitted in Historical Archetypes and Mythology class taught by Marilyn Giardino-Zych at The Los Angeles Film School. ( A true and correct copy of these assignments are appended hereto as Exhibits 1a.-1n., 2 and 2a.)

**IX.**

Plaintiff's origination, creation, and/or development of " The World of Jupiter ", and " Crisis on Jupiter ", is Plaintiff's sole and exclusive intellectual property, eligible for federal copyright registration and protection.

**X.**

Once affixed to " any tangible medium of expression ", in this case assignments submitted by email to The Los Angeles Film School, these literary works became sole and exclusive intellectual property of the Plaintiff. These literary works have since been registered with the Writer's Guild of America East and copyrighted with the United States Copyright Office, U.S Copyright Registration  # PAU3695779.

## XI.

On or around 9-8-11 and 9-18-11, Marilyn Giardino-Zych, staff member of The Los Angeles Film School, received assignments submitted to her via email entitled, " The World of Jupiter ", and " Crisis on Jupiter ". Marilyn Giardino-Zych and Peter J. Abrahams then sold these assignments to Damon Lindelof and Scott Free Productions, who fused these concepts and ideas into the film " Prometheus". Damon Lindelof later dislosed and sold time travel elements to Etan Cohen and Michael Angelo Soccio in December 2011 while MIB3 was on hiatus and doing rewrites at which time all time travel elements in MIB3 were fused into the script based on content in Plaintiff's intellectual property, " The World of Jupiter ", and " Crisis on Jupiter ".

## XII.

Under U.S. law, copyright protection subsists from the time the work is fixed in any tangible medium of expression from which it can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Copyright protects original authorship fixed in tangible form ( 17 USC sec. 102(a)). For works transmitted online, the copyrighted authorship may consist of text, artwork, music, audiovisual material( including any sounds), sound recordings, etc. 17 USC sec. 102(b)).

## XIII.

On or around, 5-25-12, Defendants released a feature length film entitled, " MIB3", which contained concepts strikingly similar to content in the shorts written by Plaintiff entitled, " The World of Jupiter ", and " Crisis on Jupiter ".

## XIV.

Plaintiff is informed and believes, and on that basis alleges that Marilyn Giardino Zych and Peter J. Abrahams of The Los Angeles Film School, disclosed and sold Plaintiff's intellectual property to Damon Lindelof  and Scott Free Productions which enables 2oth Century Fox, Scott Free Productions, Brandywine, Damon Lindelof, and Jonathon Spaihts, to exploit

Plaintiff is informed and believes, and on that basis alleges that *Marilyn Giardino Zych* and Peter J. Abrahams of The Los Angeles Film School, disclosed and sold Plaintiff's intellectual property to Damon Lindelof  and Scott Free Productions which enables 2oth Century Fox, Scott Free Productions, Brandywine, Damon Lindelof, and Jonathon Spaihts, to exploit Plaintiff's intellectual property, " The World of Jupiter " and " Crisis on Jupiter " for their own pecuniary gain. Damon Lindelof disclosed and sold time travel concepts from Plaintiff's intellectual property to Etan Cohen and Michael Angelo Soccio while they were doing rewrites for MIB3 in December 2011, enabling Sony Pictures Entertainment, Amblin Entertainment, Michael Angelo Soccio and Etan Cohen to further exploit Plaintiff's intellectual property, " The World of Jupiter " and " Crisis on Jupiter " for their own pecuniary gain.

To date, Plaintiff has not received <u>any</u> compensation or credit for his creation of " The World of Jupiter " and " Crisis on Jupiter ".

### PREVIOUS LITIGATION:

On 12-9-13, Plaintiff filed a lawsuit against The Los Angeles Film School for fraud, copyright infringement, trademark infringement, deceit, breach of contract, defamation, infliction of severe emotional distress – outrageous conduct, and reckless endangerment. ( A true and correct copy of this complaint is appended hereto as Exhibit 3.)

### FACTS:

Damon Lindelof sold unused elements of the Plaintiff's intellectual property more specifically stolen time travel technology and the concept of time travel having been made illegal, to Etan Cohen and Michael Angelo Soccio who were working on "MIB3" for Sony Pictures. Michael Angelo Soccio and Etan Cohen did the final polish to the script while "MIB3" was on hiatus in December 2011. Michael Angelo Soccio was still fusing Plaintiff's intellectual property into the MIB3 script while the production was on set filming.

( A true and correct of a copy of an article confirming this is appended hereto as Exhibit 4.)

As admitted by Josh Brolin and other cast members in interviews, there was no 2nd and 3rd act written yet as the production was in hiatus in December 2011. Etan Cohen and Michael Angelo Soccio fused the concept of two time machines and one being stolen by Boris the Animal, a blatant imitation of Cifer stealing time travel technology in Plaintiff's " Crisis on Jupiter ". After shooting these elements and adding time travel to the story, the "MIB3" production had to go back and do reshoots to make sense out of the added time travel elements. The dialogue of Emma Thompson's character in "MIB3" includes the concepts of time travel having been illegal by the MIB and Boris the animal traveling unauthorized, just as Cifer was traveling unauthorized in " Crisis oon Jupiter ", in " MIB3", J travels in time to find the character who stole the time-travel technology and was traveling unauthorized.

Once "MIB3" was released in theatres, Plaintiff noticed the intellectual property as hos own. All record of Michael Angelo Soccio being a writer on the project began being erased from the internet. The reason the studio did this is because Michael Angelo Soccio is an old friend of Plaintiff. Producers were probably worried that Plaintiff would contact Michael Angelo Soccio and he would tell Plaintiff the truth about how they acquired his intellectual property. Plaintiff contacted Michael Angelo Soccio some time later while preparing his intellectual property cases. Michael Angelo Soccio confirmed that he and Etan Cohen had been sold the Plaintiff's property by Damon Lindelof.

Interestingly enough, Steven Spielberg, who knows Plaintiff, did a spoof on Saturday Night Live called " Laser Cats ", mocking Plaintiff. Steven Spielberg mocks the character name General 322 from Plaintiff's short by calling a character in Laser Cats," General Nitro". In this skit, the characters also talk about going to Jupiter.

Further proving that Sony was using Plaintiff's intellectual property, shortly after "MIB3", Sony Pictures Entertainment used the concept of brain implant technology in " Elysium".  The lead character Max had technology implanted in his brain.

## MIB3 COMPARISONS:

### MIB3:

1. The MIB had detained Boris the Animal to keep him from time-traveling.
2. Boris the Animal stole the technology used for time-travel.
3. J used the remaining time-travel technology to chase Boris the Animal through time.
4. The MIB made time travel illegal.
5. Boris the Animal was time-traveling unauthorized.
6. Boris the Animal's right eye has implanted lens technology.

### CRISIS ON JUPITER/THE WORLD OF JUPITER:

1. The Global Military sent Earth through time to detain Cifer and keep him from time-traveling.
2. Cifer stole the technology used for time-travel.
3. Earth was to use to remaining time-travel technology to chase Cifer through time.
4. The Global Military discontinued experimentation with time-travel, thus making it illegal.
5. Cifer was time-traveling unauthorized.
6. Cifer's character picture has implanted lens technology in his right eye.

1  **MIB3** made $624,026,776.00 in the box office.

2  **MIB3** box office profit - $399,026,776.00

3  (A true and correct copy of the report from Box Office Mojo is appended hereto as Exhibit 5.)

5  **MIB3 DVD / Blue-ray SALES** since 11-13-12:

6  **DVD -** $30,960,332.00 in revenue, **Blue-ray** $27,151,426.00 in revenue.

7  (A true and correct copy of the report from The Numbers is appended hereto as Exhibit 6.)

9  **MIB3: Alien Crisis** video game sales unknown.

12  WHEREFORE, PLAINTIFF prays for judgment against Defendant(s), and each of them as

13  follows:

15      1.  Actual damages for the sum of  $500,000,000.00

16      2.  Speculative damages for the sum of  $500,000,000.00

17      3.  General damages for the sum of  $500,000,000.00

18      4.  Exemplary damages for the sum of  $500,000,000.00

19      5.  For such other and further relief as the court may deem just and proper.

22              **DATED: JUNE** *3* **, 2014**

27                **CONSTANTINO BASILE**

28                **PLAINTIFF PRO SE**

# __EXHIBIT 1a.__ - Crisis on Jupiter – Synopsis

Since time travel was achieved, their world was plagued with problems from changing things. Although the global military regulated all travel, one person in the military abused his position and began to travel unauthorized. His main concern was not the improvement of the future of their society, but to be the wealthiest man in history and run the world .Once he started bringing back technologies, and selling them prematurely to corporations on this planet, and keeping other things like brain implant technology for himself, he was always ahead of even the military. He stole the technology and created his own machine. For the global military to control all things specifically technology, they had to be the only ones bringing it back. Supreme being Jupiter, their creator, forsaked them once they began changing things with time travel. He told them that he would never communicate with their world again. He knew what would become of them. Now, one man can potentially give himself  brain power of a god. The only way to stop him would be to find where he is in time, detain him, and destroy the duplicate machine. A man named Earth and his brother Mars are the only living descendants of the first humans first created by Supreme Being Jupiter and are decorated soldiers in the military. They are chosen to hunt for the machine. It is not possible to see the future actions of a descendent of the first created, even when you travel there. He cannot be assigned a team of elite soldiers to help him because their future actions can be seen. He and is brother are the only ones that can save the planet.

# **EXHIBIT 1b.** – Earth description

**Earth{The Hero}** Being the only descendants of the first humans ever
created by the supreme being Jupiter, Earth and his brother Mars, are
asked by the global military of Jupiter to find a secondary time machine
and the scientist who stole it before any more damage can be caused to
the planet.

# **EXHIBIT 1c.** – Cifer description

**Cifer{The Shadow}**is the insane soldier scientist that stole the technology used for time travel. He has a small army of now mercinaries in his employ that will do anything for a piece of his new world

# **EXHIBIT 1d.** – General 322 description

**General 322{Shape Shifter}**A close friend of Earth's family. He served with Earth's father in several uprisings on Jupiter before retiring from the military. He is probably the only high ranking military official that Earth really trusted until he attempts to sabotage Earth and his brother Mars on their quest to find the time machine. He is in on Cipher's plan to rule the world.

## <u>EXHIBIT 1e.</u> – Mars description

**Mars {The Trickster}**He and Earth are brothers. They have been great friends since childhood. He goes on the mission with Earth and saves his life. All the while making us laugh at his opinions of the world, the new world that Cipher is trying to create, and the possibilities of the world that can be if they succeed.

# **EXHIBIT 1f.** – Kurzweil description

**Kurzweil{Mentor}**A man who immediately took a liking to Earth when he was assigned to his unit. Always a good friend and teacher, he knew just what to say to help Earth power through obstacles. He was once in charge of very secret operations, the military used him in initial experiments with time travel and then brain implants.The implants he received are not nearly as advanced as those that Cifer has obtained since experimentation has been discontinued. Kurzweil is one of only a few to be experimented on, he is the only remaining survivor of an attack on all involved. Knowing there must be some kind of inner faction at work within the military, he went into hiding continuing contact with only a few trusted comrades. Earth being one of them. Kurzweil knows the much darker and corrupt side of the military which proves very useful in Earth's mission.

# **EXHIBIT 1g.** – Real Name Unknown description

**Real Name Unknown{Threshold Guardian}**She comes into Earth's life shortly after he was asked to go on his mission. She drugged and attempted to kidnap Earth with the help of some of Cifer's mercinaries. During the attempted kidnapping, Earth killed her and her friends.

# EXHIBIT 1h.



EXHIBIT 1i. – Earth (picture suggestion)



## EXHIBIT 1j. – Cifer (picture suggestion)



# EXHIBIT 1k. - General 322 (picture suggestion)



## <u>EXHIBIT 1L.</u> – Mars (picture suggestion)



# EXHIBIT 1m. – Kurzweil (picture suggestion)



EXHIBIT 1n. – Real name unknown (picture suggestion)



# **EXHIBIT 2.** – The World of Jupiter

Constantino Basile

# JUPITER

In the beginning there was only the consciousness of [Jupiter- Supreme Being and creator of all things.].He decided that it was time to create a new world. With a bolt of lightening, he created the sun which would be the source of warmth for all living things and the energy that would allow things to grow. In the sky would also be the old sun of the old world. Now nothing but a slightly illuminated memory of the sun of the previous world that has been gone for millions of years. A reminder that all things will die without it. He then created a new world, round and perfectly distanced from the sun to sustain life. Beautiful oceans were thoughts manifested to reality again by only his thoughts. Many species of different animals would live in these oceans for other species, starting a food chain. Plants and trees and fruits then existed on a solid mass of land surrounded by these beautiful oceans .Also animals needed to obtain a functional cycle of life were created .Once Jupiter had everything as it needed to be ,He began the evolution of his newest creation,[Generations After-Man and Woman, Earth and his wife Heaven]

They lived for a short while alone and then began the process of evolution having children [Birth-a son named Peace, a daughter named Love], who had children, etc. Jupiter's creation becoming more intelligent as the population grew. They lived in peace following the teachings of Jupiter. As their society grew, so did the desire to have everything for oneself. [Loss of Innocence-The people began to fight and kill and take from others.].Disregarding the rules of Jupiter. The more advanced a society they became, the more selfish they had become. The older generations and the newer generations went to war. Many people died. Belief in the teachings of Jupiter became rare. Until one day an enormous object appeared in the sky, larger than any star. Stars were only suns of other worlds now extinct. They knew it was something more as it continued to increase in size until it hovered above their world. Jupiter had returned with a vessel for the damned. He cursed his people, as he became more and more furious, the oceans became violent. Enormous waves began destroying hundreds of thousands of

EXHIBIT 2.
-COMPLAINT-
Page 24 of 241

# EXHIBIT 2. (cont.)

people at a time. The people began to realize, their judgement was upon them. Those who believed in their creator and followed his ways were spared. Those who did not, disappeared. Some believe they were transported to another dimension to suffer for eternity.[Diver's Myth-Peace and Love found the souls of the damned in their current realm of existence and were able to make the souls a source of positive energy to be given to the survivors.]Another civilization created and failed. Jupiter would not allow this to happen .Having seen his existence the remaining survivors had solid proof that they were indeed seeing their God. Able to now pass this knowledge on to their next generations the doubt of Jupiter's superiority was gone. They would go on to live in peace for eternity. Evolving as a society able to travel through galaxies and meet with other creations of their god.

EXHIBIT 2 (cont.)

-COMPLAINT-

Page 25 of 241

1  Constantino Basile
2  10630 Moorpark St. #202
   N. Hollywood, California 91602
3  Telephone: (323) 391- 3072

4

5  Attorney For Plaintiff,
6  **CONSTANTINO BASILE**

7

8

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA
            FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

10

11 **CONSTANTINO BASILE**, an individual,            BC529792

12          **Plaintiff,**

13                                                   1ST. AMMENDED
                                                     **COMPLAINT FOR:**
14          vs.                            )
15                                         )
16                                         )
17                                         )
   **THE LOS ANGELES FILM SCHOOL,**        )  (1) FRAUD
18 **LLC. DBA THE LOS ANGELES FILM**       )  (2) COPYRIGHT INFRINGEMENT
19 **SCHOOL, and JOHN/JANE DOES 1**        )  (3) TRADEMARK INFRINGEMENT
20 **THROUGH 100, inclusive,**             )  (4) DECEIT
21          **Defendant(s)**               )  (5) BREACH OF CONTRACT
22                                         )  (6) DEFAMATION
23                                         )  (7) INFLICTING SEVERE EMOTIONAL
24                                            DISTRESS-OUTRAGEOUS CONDUCT
25                                         )  (8) RECKLESS ENDANGERMENT
26                                         )

27

28

EXHIBIT 3. ( 212 pages)
-COMPLAINT-
Page 26 of 241

1  COMPLAINT FOR FRAUD, COPYRIGHT INFRINGEMENT, TRADEMARK
2  INFRINGEMENT, DECEIT, BREACH OF CONTRACT, DEFAMATION, INFLICTING
3  SEVERE EMOTIONAL DISTRESS-OUTRAGEOUS CONDUCT, RECKLESS
4  ENDANGERMENT, AND A DEMAND FOR A JURY TRIAL.

7  Plaintiff complains and for causes of action alleges as follows:

### FIRST CAUSE OF ACTION

**(for fraud against The Los Angeles Film School)**

### I.

Plaintiff, Constantino Basile, is a resident of California and is the legal and beneficial federal copyright claimant, owner, and author of certain intellectual property, to wit a screenplay short entitled, " The World of Jupiter / Crisis on Jupiter ", which were submitted as assignments to The Los Angeles Film School via email on or around September 8, 2011 and September 18, 2011, therefore were copyrighted as Plaintiff's intellectual property upon their creation, and have since been registered with the Writer's Guild of America East and copyrighted with the United States Copyright Office, Registration # PAU36957709

### II.

Defendant, The Los Angeles Film School, is and at all times mentioned was a Corporation organized under the existing laws of the State of California with principal offices located at, 6363 Sunset Blvd. Los Angeles Ca. 90028, in the City of Los Angeles, County of Los Angeles, State of California.

### III.

## EXHIBIT 3.
-COMPLAINT-
Page 27 of 241

Defendants, John/Jane Does 1 through 100 (collectively the "Doe Defendants"), are sued herein under fictitious names for the reason that their true names and identities are presently unknown to Plaintiff except that they are connected in some manner with the named Defendant(s) and/or were the agents, principals, partners, officers, directors, servants, employees, employers, representatives, co-venturers, associates, consultants, vendors, suppliers, manufacturers, subcontractors, contractors, sureties, insurers, owners, lessees, and/or licensors of the named Defendant(s) and/or were in some manner presently unknown to Plaintiff engaged in activities alleged herein and/or were in some manner responsible for the injuries and/or damages to Plaintiff and or conducted some activity or activities in a negligent manner which was a proximate cause of injuries and/or damages to Plaintiff and/or were in some manner related to the named Defendant(s), and Plaintiff prays for leave to certify their true names, identities, capacities, activities and/or responsibilities when the same are ascertained.

## IV.

Plaintiff is informed and believes and thereon alleges that, at all times herein as mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

## V.

On or about 8-1-11, at orientation, Staff members of The Los Angeles Film School, falsely and fraudulently represented to Plaintiff that The Los Angeles Film School was not like U.S.C. Film School and that it does not own the rights to any of students submitted assignments. Students were told that they retain the ownership to all written and submitted material. At the time of making this statement, the Defendant knew the representation to be false.

## VI.

The Representations made by Defendant were in fact false. The true facts were:

---

**EXHIBIT 3.**
-COMPLAINT-
Page 28 of 241

## VII.

When the Defendant made these representations knew these representations to be false, and these representations were made by the Defendant with the intent to defraud and deceive Plaintiff and with their intent to induce the Plaintiff to act in the manner herein alleged. And at the time the Defendant made the promises to the Plaintiff, Defendant had no intention of performing them.

## VIII.

Plaintiff, at the time these representations were made by Defendant and at the time Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendant's representations and believed them to be true. Or Plaintiff, at the time this promise was made and at the time the Plaintiff took the actions herein alleged, was ignorant of the Defendant's secret intention not to perform and Plaintiff could not, in the exercise of reasonable diligence, have discovered Defendant's secret intention. In reliance on these representations, Plaintiff was induced to and did. Had the Plaintiff known the actual facts, would have not taken such action. Or if Plaintiff had known the actual intention of Defendant, Plaintiff would not have taken such action.

## IX.

On or around 9-8-11 and 9-18-11, Plaintiff originated, created, and/or otherwise developed literary and artistic works entitled, "The World of Jupiter", and "Crisis on Jupiter", for submission as assignments. These works consisted of a short story creation myth and a power point with short story synopsis, character descriptions and picture suggestions of what the characters should look like. These assignments were submitted in Historical Archetypes and Mythology class taught by Marilyn Giardino-Zych, at The Los Angeles Film School.

## X.

EXHIBIT 3.
-COMPLAINT-
Page 29 of 241

Plaintiff's origination, creation, and/or development of, " The World of Jupiter ", and " Crisis on Jupiter ", is Plaintiff's sole and exclusive intellectual property, eligible for federal copyright registration and protection.

## XI.

Once affixed to " any tangible medium of expression ", in this case assignments submitted by email to The Los Angeles Film School, these literary works became sole and exclusive intellectual property of the Plaintiff. These literary works have since been registered with the Writer's Guild of America East and copyrighted with the United States Copyright Office, Registration # PAU3695779.

## XII.

On or around 9-8-11 and 9-18-11, Marilyn Giardino-Zych, staff member of The Los Angeles Film School, received assignments submitted to her via email entitled," The World of Jupiter ", and " Crisis on Jupiter ". Marilyn Giardino-Zych then sold these assignments with the help of Peter J. Abrahams, to Damon Lindelof and Scott Free Productions, who fused these concepts and ideas into the film " Prometheus ". Damon Lindelof sold parts of this material to several different writers who also fused concepts and ideas from this material into projects they were working on. These other projects being," The Dark Knight Rises ", " MIB3 ", and " Prototype ".
( A true and correct copy of Plaintiff's submitted assignments are appended hereto as Exhibits 1a. through 1n., and Exhibit 2.)

## XIII.

On or around 3-9-12, Plaintiff saw the trailer of " Prometheus " for the first time on television. On or around 3-12-12, Plaintiff went to the Los Angeles Film School campus to speak to Marilyn Giardino-Zych. Plaintiff saw her leaving the school but was not able to speak to her. Later that same day, Plaintiff called the school to speak to her or leave a message with her office.

EXHIBIT 3.
-COMPLAINT-
Page 30 of 241

Plaintiff's call was transferred to Dominic Koletes, staff member at The Los Angeles Film School. Dominic Koletes told Plaintiff that he didn't know any teacher named Marilyn Giardino-Zych, and after looking at the school computer, he told Plaintiff that there was no record of any teacher ever having worked at The Los Angeles Film School.

## XIV.

On or around 3-14-12, Plaintiff approached Peter J. Abrahams, teacher at The Los Angeles Film School, near the Brain Café inside the school. Plaintiff sat with Peter J. Abrahams to tell him what had happened. During this conversation, Plaintiff told Peter J. Abrahams that he had seen a trailer for " Prometheus " on television and immediately recognized it as his idea that he had submitted to Marilyn Giardino-Zych in Historical Archetypes and Mythology class. Plaintiff also told Peter J. Abrahams that he had called the school to speak to Marilyn Giardino-Zych, and was transferred to Dominic Koletes, who told Plaintiff that there was nobody named Marilyn Giardino-Zych ever having worked at the school. Peter J. Abrahams's behavior became very strange and he couldn't even look at Plaintiff. He then told Plaintiff that was getting his wisdom teeth pulled and would not be at the school for a few days, but that he would help the Plaintiff figure out what is happening. Peter J. Abrahams then told Plaintiff to email the specifics, and also said that after reading his email he would advise him about what the best course of action would be.

## XV.

On or around 3-15-12, Plaintiff emailed assignments to Peter J. Abrahams for his review with an attached letter specifying reasons for a lawsuit according to his research. Plaintiff also told Peter J. Abrahams that he had seen an article in The Hollywood Reporter detailing that Damon Lindelof had been hired to rewrite " Prometheus " about a week after Plaintiff's assignment was submitted to Marilyn Giardino-Zych.  This article also mentioned that Damon Lindelof had met with Raymond Kurzweil to talk specifically about brain implants and time travel, which were two very specific concepts from Plaintiff's short. More specifically, they were

---

## EXHIBIT 3.
-COMPLAINT-
Page 31 of 241

1   in the description of the character " Kurzweil " from Plaintiff's short. This article has since been

2   deleted and was done so before Plaintiff knew to save it for evidence, however, the fact that the

3   Plaintiff mentioned it in his email to Peter J. Abrahams proves that it was on the internet at the

4   time because there was nothing about this in the film's trailer, and the film had not been released

5   yet. Plaintiff also tells Peter J. Abrahams in his email that the material he had submitted as

6   assignments was protected and that the teacher selling it and the writer using it as his own were

7   clearly infringing on Plaintiff's material. ( A true and correct copy of this email is appended

8   hereto as Exhibit 3.)

9       * The Hollywood Reporter denied having erased the article. Plaintiff would like to

10  subpoena the records of all articles written and released during that time about Damon Lindelof

11  being brought on to rewrite the " Prometheus " screenplay at the time when Plaintiff's

12  assignments were submitted, and about Ray Kurzweil and Damon Lindelof's meetings. The

13  article noting specifically that they discussed brain implants and time travel was the article that

14  the Plaintiff was referring to in his email to Peter J. Abrahams.

15

16                                        **XVI.**

17      On or around 3-17-12, Peter J. Abrahams responded to Plaintiff's email notifying him

18  that he was not aware that particular material belonged to Plaintiff, suggesting that he was

19  familiar with the material. ( A true and correct copy of this email is appended hereto as Exhibit

20  3.)

21      Peter J. Abrahams not only left the school after being confronted, he moved from a small

22  apartment on Delongpre in Hollywood Ca. to a million dollar house in an exclusive area on

23  Beachwood Canyon in Hollywood Ca. Peter J. Abrahams would not answer Plaintiff's phone

24  calls after this conversation and still hasn't to this day.

25  According to Peter J. Abraham's profile on the U.C.L.A. website, Peter J. Abrahams is now

26  teaching at U.C.L.A., and also working in London, headquarters of Scott Free Productions, the

27  company that made " Prometheus ". Plaintiff would like to subpoena Peter J. Abraham's tax

28  returns for the years 2011, 2012, 2013, before trial.

---

**EXHIBIT 3.**
-COMPLAINT-
Page 32 of 241

## XVII.

On or around 3-22,12, coincidentally only 5 days after Plaintiff approached Peter J. Abrahams about his material being stolen and sold, Venita Rene, in the financial aid department at The Los Angeles Film School, notified Plaintiff that his financial aid had been " randomly selected " for verification. Venita Rene was very vague when referring to Plaintiff's loan only saying that his loan check, which was to partly be used towards Plaintiff's tuition payment, would not be available until some things were verified. Plaintiff was later told by a representative at Sallie Mae, the company that provided the loan, that this process doesn't exist.( A true and correct copy of this email is appended hereto as Exhibit 19.)

## XVIII.

After a month of filling out documents and providing Venita Rene with everything she said she needed for this supposed " verification ", Plaintiff was expecting to go back to school the next month. On the day of the deadline to begin at the beginning of that coming month, which was May 2012, the representative handling this process, Venita Rene, was conveniently on vacation. When she returned, Venita Rene told Plaintiff he had to wait another 30 days before coming back to school because his loan was not approved. Venita Rene then tricked Plaintiff by telling him that since his loan wasn't yet approved, and he couldn't pay his tuition without it, he should take a leave of absence while waiting for the loan to be approved, otherwise, it would show as a month of missed classes. The end of May 2012, Venita Rene finally said that the loan was approved. Plaintiff now expected that he would be able to start classes in June. Venita Rene now told Plaintiff that he could not go back to school because he needed to be currently enrolled for 30 days to receive his loan check. Venita Rene told Plaintiff to take the leave of absence and then used that to stall him from returning to classes for another 30 days. When Plaintiff asked Venita Rene why she was making things so difficult for him, she replied that that's what "they" keep telling her to do. Obviously, "they" being the owner and teachers of the school. The owner and staff of The Los Angeles Film School stalled as long as they could to make sure Peter J. Abrahams was no longer at the school when Plaintiff returned, and to allow enough time to

EXHIBIT 3.
-COMPLAINT-
Page 33 of 241

enroll all of The Los Angeles Film School's employees into their scheme they had devised to conceal their actions.

Plaintiff now has documents from Sallie Mae, the company that provided the loans. Proven in this document, is that Venita Rene, the representative carrying out this fraud in the financial aid office at The Los Angeles Film School, said that the loan wasn't approved before she had even submitted it. As previously mentioned, 3-22-12, 5 days after Plaintiff approached Peter J. Abrahams for help upon realizing he had been stolen from, Plaintiff was told that his loan was not approved pending verification.

The document recently received by Plaintiff from Sallie Mae, confirms that the loan had not even been submitted yet by The Los Angeles Film School. Sallie Mae did not receive the loan application from the financial aid department until 4-2-12. This loan was immediately approved after only a few days, and then certified by The Los Angeles Film School to Sallie Mae on 4-25-12. Venita Rene and The Los Angeles film school continued telling Plaintiff that his loan was not approved until the end of May, then used the excuse of taking a leave of absence to not allow him to return for another 30 days. Plaintiff's loan was approved and certified by May 25,2012, at which time Plaintiff should have been allowed to go back to classes had it not been for The Los Angeles Film School's conspiracy to keep him away from the teacher who was involved in the sale of Plaintiff's stolen material. The Los Angeles Film School owners and staff all participated in a conspiracy to defraud the Plaintiff and conceal their malicious and intentional copyright infringement by selling his intellectual property as their own.( A true and correct copy of this document is appended hereto as Exhibit 46.)

### XIX.

Finally, in July 2012, Plaintiff was allowed to return to the school and begin Production Design, taught by Barbara Dunphy. While trying to submit an assignment to Barbara Dunphy from his Los Angeles Film School email, the email from which all assignments must be submitted, Plaintiff noticed that he was unable to attach anything to an outgoing email. At this

EXHIBIT 3.
-COMPLAINT-
Page 34 of 241

time, Plaintiff also realized that his school email had been hacked and assignments that were submitted to Marilyn Giardino-Zych were removed from his school email. Plaintiff told Barbara Dunphy about this the next day and she told Plaintiff to put everything on a flash drive and she would accept that way. At the end of the month when Plaintiff tried to give her the flash drive with all of the required assignments, Barbara Dunphy wouldn't accept it, then tried to fail Plaintiff. After speaking to student services and telling them what had happened, they allowed Plaintiff to continue.

On or around 6-7-12, Plaintiff's other email address reported an attempted hacking suggesting that Plaintiff's school email had been hacked at the same time. ( A true and correct copy of this email is appended hereto as Exhibit 20.)

## XX.

Plaintiff now notified The Los Angeles Film School I.T. department that his email had been hacked and assignments submitted containing original creation dates had been removed. I.T department would not return Plaintiff's phone calls. The Los Angeles Film School's staff was now conspiring to cover-up their actions and engaged in the spoliation of evidence by means of removal.

## XXI.

Already having paid his tuition, Plaintiff continued to attend The Los Angeles Film School in hoped of being able to at least complete his 18 month course and receive his degree, all the while being forced to be in an environment where he was being plotted against by the staff of The Los Angeles Film School. Thus far, lying about his loan not being approved to keep him away from the teachers who stole his material, hacking his email to remove the only evidence he had of ever having submitted the assignments to the school, and playing games to try to make him fail. After The Los Angeles Film School had committed such illegal acts against Plaintiff, Plaintiff began to research his legal options while still attending classes.

## EXHIBIT 3.
-COMPLAINT-
Page 35 of 241

## XXII.

The Plaintiff now found that Marilyn Giardino-Zych had started an online fundraiser on Indie Gogo through which she laundered $18,794.00. This was cash that she had received for the sale of Plaintiff's intellectual property. ( A true and correct copy of the list of donations and persons who made them is appended hereto as Exhibit 41.) Plaintiff would like to depose all donating parties, to have one of them admit that she was giving them cash to make their donations. Plaintiff would also like to subpoena before trial all records that Indie Gogo has on file for this fundraiser. Around this time, Christina Nova-Zych, Marilyn Giardino-Zych's daughter, began posting pictures on her Facebook posing with Mercedes Benzs. Judging from the YouTube video she posted taunting Plaintiff by asking if he liked fire, the myth behind the title," Prometheus ", this was just another effort to brag about the money that Marilyn Giardino-Zych had made from the sale of the Plaintiff's stolen material.

On or around 8-10-12, Marilyn Giardino-Zych held another fundraiser at The Other Bar in N. Hollywood Ca., for her medical expenses that she knew by now would be scrutinized by The I.R.S. Plaintiff doesn't know the exact amount that was laundered at this fundraiser, but would like to subpoena all records from the owner of The Other Bar, and subpoena the list of guests from the event's organizers. The event's organizers are Christina Nova-Zych, Jennifer Jonassen, Megan Pepper, Katie Mitchell.

Plaintiff would also like to subpoena before trial all tax records for Marilyn Giardino-Zych and her co-conspirators, Charles Q. Zych, Christina Nova-Zych, and Margo Butera.

## XXIII.

On or around 8-13-12, Plaintiff attempted to contact Marilyn Giardino-Zych through her email. Robert Sweeney, staff member of The Los Angeles Film School, answered Marilyn Giardino-Zych's email telling Plaintiff that she could no longer be reached at her email address, contradicting what Dominic Koletes had previously said to Plaintiff, that she was never employed by The Los Angeles Film School. ( A true and correct copy of this email is appended hereto as Exhibit 4.)

EXHIBIT 3.
-COMPLAINT-
Page 36 of 241

## XXIV.

On or around 8-31-12, while still trying to finish his degree and find legal representation, Robert Sweeney, staff member of The Los Angeles Film School, called Plaintiff and left a message falsely and recklessly accusing Plaintiff of stealing a computer earlier that day from the desk of Christopher Lippi, math teacher at The Los Angeles Film School. As if the staff hadn't already tried everything, they now had Christopher Lippi defame Plaintiff by filing a complaint with Robert Sweeney saying that he had seen the Plaintiff take his computer from his desk at the end of class. Christopher Lippi originally had said that he thought that he had seen Plaintiff take his computer, then changed the story to maybe the plaintiff took his computer instead of his own, which if true, the Plaintiff would have left his own computer. If the Plaintiff had taken a computer off of Christopher Lippi's desk, Christopher Lippi would have said something as it was happening. This suggests that it was yet another devised scheme to defame Plaintiff and possibly have him falsely arrested to not only get him out of the school, but also to prevent him from filing a lawsuit for the crimes committed against him. Plaintiff was humiliated by such defamation and conspiracy against and was forced to stop attending classes at The Los Angeles Film School, fearing what the staff might do next.( A true and correct copy of the transcript of this message is appended hereto as Exhibit 5.)
Plaintiff has a recording.

## XXV.

On or around 10-9-12, Plaintiff attempted to contact Marilyn Giardino-Zych at her home in Lake Hughes Ca. Plaintiff was very professional in the way he spoke to Christina Nova-Zych, Marilyn Giardino-Zych's daughter, as she answered the phone. Her behavior was very suspicious and guilty because after the Plaintiff introduced himself, but before he could say the reason for his call, she began yelling at him and hung up the phone.

EXHIBIT 3.
-COMPLAINT-
Page 37 of 241

## XXVI.

On or around 11-19-12, after being made aware of his rights, Plaintiff attempted to reason with Robert Sweeney by contacting him by email, and ask for his assignments back. When Plaintiff told Robert Sweeney that he needed the original emails back with the original creation dates that were removed from his email, Robert Sweeney did not want to give them back and said it wasn't the school's responsibility to store student's emails. Knowing that these documents contained the original creation dates to act as copyright registration in the event of an intellectual property lawsuit, Robert Sweeney concealed with the intent to impair availability of documents for legal proceedings, as he and several other staff members of The Los Angeles Film School had already been given adequate reason to anticipate a lawsuit against them. ( A true and correct copy of this email is appended hereto as Exhibit 4.).

## XXVII.

On or around 11-19-12, Robert Sweeney returned only part of the Plaintiff's property by emailing only one of the assignments, " Crisis on Jupiter ". ( A true and correct copy of this email is appended hereto as Exhibit 4a.).

## XXVIII.

On or around 11-20-12, Plaintiff responds to Robert Sweeney's email telling him that he would need both assignments to be returned to him. ( A true and correct copy of this email is appended hereto as Exhibit 4b.). Plaintiff told Robert Sweeney that he found it strange that Marilyn Giardino-Zych would erase one assignment and keep the other one.

Plaintiff now saw the previously mentioned YouTube video posted by Christina Nova-Zych taunting the Plaintiff by asking the persons watching if they liked fire. The mythology behind the title " Prometheus ", is that Prometheus had stolen fire from the Gods and given it to man. This further proved that Marilyn Giardino-Zych's family knew of the theft and sale of the Plaintiff intellectual property and they participated in the fraud.

---

# EXHIBIT 3.
### -COMPLAINT-
Page 38 of 241

Referring again to the email correspondence with Robert Sweeney, on 11-20-12, Plaintiff asked Robert Sweeney if maybe he could contact Marilyn Giardino-Zych and ask about the missing assignment," The World of Jupiter ", or as referred to in Plaintiff's email as " In the Beginning ", as Plaintiff didn't remember the title, only the first three words. Attempting to conceal the assignment and further impede a civil litigation, Robert Sweeney sent a threatening letter of communication to Plaintiff. ( A true and correct copy of this email is appended hereto as Exhibit 4b.).

Consequently, the staff of The Los Angeles Film School stalled long enough for Marilyn Giardino-Zych to die of illness before Plaintiff was able to speak to her or get her deposition regarding the sale of his intellectual property.

## XXIX.

On or around 11-21-12, Plaintiff responded to Robert Sweeney's email again telling him what had happened as if he didn't already know, repeating the surrounding circumstances and that Plaintiff had been made aware of his rights and how they had been violated, and that legal action is pending. ( A true and correct copy of this email is appended hereto as Exhibit 4c.).

## XXX.

On or around 12-5-12, Plaintiff was going through his Los Angeles Film School email and found that his missing email assignment entitled, " The World of Jupiter ", had miraculously re-appeared in his inbox. It was the original email sent to Marilyn Giardino-Zych, making obvious to Plaintiff that The Los Angeles Film School was in control of his email. The hacking of the email and the return of it can be tracked. Plaintiff has been corresponding with forensic computer specialist Bruce Anderson of C.I.S. ( A true and correct copy of this email is appended hereto as Exhibit 6 and 6a.).

EXHIBIT 3.
-COMPLAINT-
Page 39 of 241

## XXXI.

On or around 12-21-12, Plaintiff contacted Diana Dercyk-Kessler, President and C.E.O. of The Los Angeles Film School and tells her what has happened with his submitted material and the conspiracy and other crimes committed by her staff, giving her the benefit of the doubt as if she didn't know anything, which she most certainly did.

( A true and correct copy of this email is appended hereto as Exhibit 7).

## XXXII.

On or around 1-2-13, Plaintiff sends another email to Diana Dercyz-Kessler as he had not received a response from the previous email he had sent her. ( A true and correct copy of this email is appended hereto as Exhibit 8.)

## XXXIII.

On or around 1-3-13, Diana Dercyz-Kessler denies knowing anything about it and tells Plaintiff she would speak to her staff and then contact Plaintiff. ( A true and correct copy of this email is appended hereto as Exhibit 8.)

## XXXIV.

On or around 1-8-13, Plaintiff receives an email from Jenna Langer, staff member of The Los Angeles Film School, asking that they meet and discuss the matter and settle it informally.( A true and correct copy of this email is appended hereto as Exhibit 8a.)

## XXXV.

On or around 1-8-13, Plaintiff asks Jenna Langer that since he had been subjected to such abuse and had such a tremendous amount of stress inflicted upon him intentionally by the staff of The Los Angeles Film School, that she provide him with a suite where he could relax and collect his thoughts and then they could meet and discuss settlement. Plaintiff also advised Jenna Langer that he had been speaking to Gloria Allred's office regarding this matter and that if The Los

EXHIBIT 3.
-COMPLAINT-
Page 40 of 241

Angeles Film School made this act of good faith, he would not file a lawsuit. ( A true and correct copy of this email is appended hereto as Exhibit 8a.)

## XXXVI.

On or around 1-10-13, Jenna Langer emails Plaintiff denying any wrongdoing, but does acknowledge that only one assignment was returned to Plaintiff by Robert Sweeney when Plaintiff contacted him by email. Attempting to deny the very existence of the missing assignment entitled, " The World of Jupiter ". Jenna Langer tells Plaintiff that he had received credit for all assignments that he submitted and none of his assignments had been misappropriated. ( A true and correct copy of this email is appended hereto as Exhibit 9 and 9a.) If all of Plaintiff's emails were accounted for, and The Los Angeles Film School claimed not to have any assignment entitled," The World of Jupiter ", now that Plaintiff has reacquired his assignment by it mysteriously appearing in his Los Angeles Film School email inbox, he has an assignment that they say didn't exist. Concealing the existence of anything in a civil litigation is spoliation by means of removal and concealment. Plaintiff received in this email from The Los Angeles Film School a signed document regarding his recent communications with The Los Angeles Film School. After Plaintiff reviews his records from orientation dated 7-24-11, Plaintiff finds that he does not have such a document suggesting that this document was never signed by Plaintiff and that it is a forgery to further defraud Plaintiff. ( A true and correct copy of this document is appended hereto as Exhibit 9b, 9c, 9d.)

## XXXVII.

On or around 1-10-13, Plaintiff responded to Jenna Langer's email. Plaintiff had not yet looked through his documents as they were in storage, but did tell Jenna Langer that he was aware of how his rights had been violated and he knew specifically what they were guilty of and was taking legal action against The Los Angeles Film School and all parties involved in the infringement of his intellectual property especially The Los Angeles Film School who's faculty sold the material as their own. Plaintiff also mentions specifics of the scheme devised and carried

EXHIBIT 3.
-COMPLAINT-
Page 41 of 241

1  out by their staff. Plaintiff gave Jenna Langer the opportunity to access their exposure and make

2  an appropriate offer before he would file in court.( A true and correct copy of this email is

3  appended hereto as Exhibit 10.)

4

5  ## XXXVIII.

6  On or around 1-11-13, Jenna Langer responded to Plaintiff asking to have a meeting to

7  discuss settlement. After Jenna Langer asking Plaintiff to come to the School to have their

8  meeting, Plaintiff told Jenna Langer that in what appeared to be staged events, Plaintiff was

9  almost attacked by a student, once in front of a teacher who said and did nothing, making it a

10 suspicious event that Plaintiff feared would happen again. One of the last times Plaintiff was at

11 the school, Christopher Lippi and Robert Sweeney conspired to have Plaintiff arrested by falsely

12 accusing him of theft. In the message left by Robert Sweeney, it sounds as though he is making a

13 veiled threat to Plaintiff that Christopher Lippi would say that he saw Plaintiff take his computer.

14 Judging from the actual threat Robert Sweeney made in the email he sent Plaintiff, a reasonable

15 person could hardly blame the Plaintiff for not wanting to go back to the school. The Los

16 Angeles Film School has a history from previous cases filed against them, specifically alleging

17 that they bribe students to lie for them. Therefore, Plaintiff wanted to meet in a public place. ( A

18 true and correct copy of this email is appended hereto as Exhibit 11.)

19

20 ## XXXIX.

21 On or around 1-14-13, Jenna Langer indicated in an email that " given the serious nature

22 of their discussions ", they didn't want to meet Plaintiff in a public place and scheduled a phone

23 meeting at 12:00 p.m. on 1-14-13. ( A true and correct copy of this email is appended hereto as

24 Exhibit 12.)

25

26 ## XL.

27 On or around 1-14-13, Plaintiff and Jenna Langer began settlement discussions. Jenna

28 Langer behaved as if she didn't know any specifics about anything and made Plaintiff repeat

---

## EXHIBIT 3.

-COMPLAINT-
Page 42 of 241

1  everything even though surrounding circumstances of the theft and sale of Plaintiff intellectual
2  property had been made very clear to both Jenna Langer and Diana Dercyk-Kessler in previous
3  emails. In these previous emails
4  Plaintiff said he could provide all evidence to support his claims. After only a few minutes, Jenna
5  Langer immediately and urgently asked what Plaintiff thought would be an appropriate number
6  would be to compensate him for the damages sustained by The Los Angeles Film School's
7  actions. Not having a number prepared, Plaintiff told Jenna Langer that the films that used the
8  Plaintiff's property have the earning potential in the billions. Jenna Langer said that the school
9  would need a few days to come up with an appropriate number. ( A true and correct copy of a
10 transcript of this conversation is appended hereto as Exhibit 13.) Plaintiff also has a recording of
11 this conversation.

12
13                                    **XLI.**
14        During the next few days that Jenna Langer took to " come up with an appropriate
15 number ", Plaintiff saw " Broken City ", and recognized a character from another short written in
16 a different screenwriting class at The Los Angeles Film School taught by Linda Cowgill
17 confirming that selling student's material is commonplace amongst the staff at The Los Angeles
18 Film School.

19
20                                    **XLII.**
21        A few days later, Plaintiff was contacted by Jenna Langer. Plaintiff brought this to Jenna
22 Langer's attention at the beginning of this call, that a character submitted to Linda Cowgill had
23 appeared in " Broken City ". Since part of this assignment that was emailed to Linda Cowgill
24 was also missing from Plaintiff's email, Plaintiff asked Jenna Langer to return the missing part
25 of the  assignment that was also submitted in hard copy,  she replied, " We gave you everything
26 back! " By saying this, she was admitting to having knowledge of multiple assignments being
27 hacked from Plaintiff's email. After this exclamatory rebuttal, Jenna Langer then changed her
28 position and said that The Los Angeles Film School has no intention in making any settlement

EXHIBIT 3.
-COMPLAINT-
Page 43 of 241

offer, and that they are guilty of nothing. Their intentions were only to lead the Plaintiff on and cause even further emotional distress.

Since this conversation, Plaintiff's computer has been hacked several times while preparing this case, and again, coincidentally the recording of this second conversation was deleted from Plaintiff's computer desktop.

### XLIII.

On or around 4-19-13, Plaintiff again contacted Jenna Langer at The Los Angeles Film School via email in hopes of opening settlement discussions again. Plaintiff's email was not answered. ( A true and correct copy of this email is appended hereto as Exhibit 14.)

### XLIV.

On or around 5-7-13, Plaintiff contacted Diana Derycz-Kessler via email, his email was not answered. ( A true and correct copy of this email is appended hereto as Exhibit 15.)

### XLV.

On or around 5-18-13, Patrick Olmstedt, Head of Security for The Los Angeles Film School, sent an email to Plaintiff telling him not to contact The Los Angeles Film School again, speaking as if Plaintiff had not previously had any settlement talks with The Los Angeles Film School. ( A true and correct copy of this email is appended hereto as Exhibit 16.)

### XLVI.

On or around 5-19-13, Plaintiff responds to Patrick Olmstedt and tells him that he had been speaking to Jenna Langer and Diana Kessler regarding settlement when they asked to settle the matter informally. Clarifying the situation to Patrick Olmstedt, Plaintiff also notified him that

EXHIBIT 3.
-COMPLAINT-
Page 44 of 241

the Head of Security for 20th Century Fox, whom Plaintiff had never spoken to, had already begun intimidation tactics against Plaintiff. Plaintiff had by this time already been approached and threatened several times in the street near is residence, and once directly in front of his residence. Plaintiff also notifies Patrick Olmstedt that The Los Angeles Film School had put him in a very dangerous position. ( A true and correct copy of this email is appended hereto as Exhibit 17.)

## XLVII.

On or around 7-22-13, Plaintiff sent an email to Patrick Olstedt to notify him that the evidence would be submitted to the ACCSC for review and gives The Los Angeles Film School a chance to settle.( A true and correct copy of this email is appended hereto as Exhibit 18.)

## XLVIII.

On or around 5-17-13, Plaintiff filed a detailed complaint with The Accrediting Commission of Career Schools and Colleges. The case was grossly mishandled. Initially, Plaintiff was told that after sending a detailed letter explaining what happened, he would later be asked to provide all evidence detailing the fraud committed by The Los Angeles Film School. After 30 days, Plaintiff called the representative handling the case at The ACCSC to see what the school had said in response. The ACCSC representative told Plaintiff that ACCSC would now base their decision on whether to open a case against The Los Angeles Film School on the school's response alone. This doesn't make any sense as the Los Angeles Film School would obviously deny everything not wanting a problem with their accreditation. When Plaintiff told ACCSC representative that that's not what he was initially told Plaintiff, his call was transferred to another representative. This representative, Ellen Podgowsky, asked for the evidence to be submitted for review by the board. Plaintiff was now told that The Los Angeles Film School had 30 days to answer. After 30 days, Ellen Podgowsky would not answer Plaintiff's phone calls. After Plaintiff sent another letter to Joel English, a member of the Accreditation Commission, Plaintiff quickly received a letter from Ellen Podgowsky saying that The ACCSC had closed this

EXHIBIT 3.
-COMPLAINT-
Page 45 of 241

complaint. The ACCSC did this without even speaking to Plaintiff and without telling him what the school had said in response. The ACCSC said that they had found no wrongdoing clearly overlooking all evidence that was submitted to them. They also made a point of noting in this letter that they are only responsible for monitoring whether or not the Plaintiff's needs were met by the school's student services. The staff of The Los Angeles Film School had admittedly committed very serious crimes against the Plaintiff, most certainly not in compliance with The ACCSC's accreditation standards.

Plaintiff seeks compensatory, and/or statutory damages; and such other further relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION

### ( for breach of contract )

-Plaintiff hereby incorporates certain of the above paragraphs of this complaint as if fully set forth at length: To wit paragraphs: **I -XLVIII.**

### XLIX.

On or about 7-24-11, at orientation at The Los Angeles Film School, Plaintiff was told by staff members that their school was unlike other film schools, such as U.S.C., that acquire the ownership rights of projects that are submitted to them as assignments. The Plaintiff was assured that he would retain all ownership of all intellectual property submitted to The Los Angeles Film School. Upon saying this, The Los Angeles Film School entered into an oral agreement with the Plaintiff assuring him that they would not engage in any theft of his submitted material. After having submitted material to Marilyn Giardino-Zych, and having it stolen and sold as her own with the help of Peter J. Abrahams, and then submitting an assignment to Linda Cowgill and

EXHIBIT 3.
-COMPLAINT-
Page 46 of 241

having it stolen and sold as her own, and all of these staff members unlawfully profiting from the sale of Plaintiff's intellectual properties, The Los Angeles Film School is in breach of this agreement. Plaintiff has suffered severe damages as a direct result of their malicious and intentional actions, as the films that were created from these basic concepts have profited various parties billions of dollars.

Plaintiff seeks compensatory, and/or statutory damages; and such other and further relief as the Court deems just and proper.

### THIRD CAUSE OF ACTION
#### ( for concealment and deceit )

-Plaintiff hereby incorporates certain of the above paragraphs of this complaint as if fully set forth at length: To wit paragraphs: **I - XLIX.**

### L.

On or around 3-12-12, The Los Angeles Film School began to engage in the spoliation of evidence to conceal material necessary for the Plaintiff's intellectual property cases when Dominic Koletes denied knowing anyone named Marilyn Giardino-Zych who worked at the school, and that there was nothing in the school's computer to suggest that there ever was anyone named Marilyn Giardino-zych ever employed by The Los Angeles Film School.

### LI.

The Los Angeles Film School then prevented Plaintiff from speaking to Peter J. Abrahams after briefly speaking to him at the school, by illegally cutting off his financial aid and lying about the status of his loan, initially saying that it was not approved before they had even

EXHIBIT 3.
-COMPLAINT-
Page 47 of 241

1   submitted it, then took the fraud even further by saying it wasn't approved for a few months after

2   it was immediately approved by Sallie Mae upon submission. All of this done with the intention

3   of keeping Plaintiff away from the school long enough for Marilyn Giardino-Zych and Peter J.

4   Abrahams to leave the school, avoid questions from the Plaintiff, and continue to conceal the

5   truth about the sale of Plaintiff's intellectual property.

6

7                                                   **LII.**

8          On or around 6-7-12, Plaintiff noticed that his Los Angeles Film School email had been

9   hacked, and his assignments to Marilyn Giardino-Zych had been removed. The Los Angeles

10  Film School teachers and staff members were the only parties that knew those assignments were

11  in Plaintiff's school email inbox and the only parties who would have motive to remove this

12  material. Plaintiff has consulted with Bruce Anderson, computer forensic specialist at C.I.S., who

13  told Plaintiff that for a fee of $2,500.00 – 3,500.00, he can retrieve the imprint that the removal

14  would leave in the email forensics. Plaintiff does not have the money that Bruce Anderson at

15  C>I>S> would need to perform such a service. However, as the spoliation of evidence by means

16  of removal with the intention of impeding a civil litigation is a criminally punishable offense as

17  stated in precedent case Dupont vs. Kolon, Plaintiff asks that the Court orders access of the

18  needed computer belonging to The Los Angeles Film School, to be given to a court appointed

19  forensic specialist.

20

21                                                  **LIII.**

22         On or around 6-8-12, Plaintiff called the I.T. department at The Los Angeles Film School

23  and left a message detailing what had happened. The I.T. department did not return his call.

24  Plaintiff knew that they would most probably deny hacking the email since it is a very serious

25  crime, therefore decided to research his legal options. Again, The Los Angeles Film School

26  continued to conceal pertinent documents in a civil litigation after having knowledge of a

27  pending lawsuit, therefore they engaged in the spoliation of evidence by means of removal.

28

EXHIBIT 3.
-COMPLAINT-
Page 48 of 241

**LIV.**

On or around 8-13-12, Plaintiff tried to contact Marilyn Giardino-Zych by email. Robert Sweeney responded telling Plaintiff that Marilyn Giardino-Zych was no longer employed by the school, and not available at her school email address. This was contradictory to what Dominic Koletes previously told Plaintiff, that Marilyn Giardino-Zych was never employed by the school.

**LV.**

On or around 11-19-12, when Plaintiff asked Robert Sweeney via email to return the assignments, Robert Sweeney initially didn't want to give them back. After a few emails explaining the importance of these emailed assignments, which Robert Sweeney was already aware of, he returned only one assignment entitled, " Crisis on Jupiter ", telling Plaintiff that was the only Jupiter file in Marilyn's email that he had taken over for whatever unknown reason. The Los Angeles Film School was already aware of a pending lawsuit. Therefore, this is further evidence that The Los Angeles Film School intentionally removed and concealed the other assignment entitled, " The World of Jupiter " from the Plaintiff so he would not have the original creation dates on the assignment, knowing he would need this to prove that is was indeed his material and was created on those dates if he filed a copyright infringement lawsuit against the staff of The Los Angeles Film School, the writers it was sold to, and the studios who made the films.

**LVI.**

On or around 11-21-12, Plaintiff asked Robert Sweeney via email that since he supposedly couldn't find the email in Marilyn Giardino-Zych's email, if maybe he could contact her or her family to see if Marilyn Giardino-Zych had the assignment in her files. Plaintiff explained to Robert Sweeney that he had tried to contact Marilyn Giardino-Zych and encountered her daughter Christina Nova-Zych who was extremely rude and yelled and hung up the phone. Robert Sweeney did not want to give the assignment back and threatened Plaintiff

**EXHIBIT 3.**

-COMPLAINT-

Page 49 of 241

1  about contacting Marilyn Giardino-Zych or her family attempting to intimidate Plaintiff and

2  conceal evidence.

3      Plaintiff has the assignment now because it miraculously appeared in his email inbox on

4  or around 12-5-12, after speaking to Robert Sweeney about it. Therefore The Los Angeles Film

5  School intentionally concealed it from the Plaintiff when he asked for it, because if it was not in

6  Marilyn Giardino-Zych's email as a submitted assignment, then it was removed with the

7  intention of concealing it form the Plaintiff.

8

9  Plaintiff seeks compensatory, and/or statutory damages; and such other and further relief as the

10  Court deems just and proper.

11

12

13

14  **FOURTH CAUSE OF ACTION**

15  ( for defamation )

16

17    -Plaintiff hereby incorporates certain of the above paragraphs of this complaint as if fully set

18  forth at length: To wit paragraphs: **I - LVI.**

19  -  .

20  **LVII.**

21      On or around 8-31-12, Christopher Lippi filed a complaint with Robert Sweeney, staff

22  member of The Los Angeles Film School, stating that Plaintiff stole his computer from his desk

23  at the end of class. Plaintiff was the last student remaining in the classroom that day as he and

24  Christopher Lippi were working on a math problem on the board. When completed, Plaintiff

25  walked to his own desk on the other side of the classroom and grabbed his own computer in his

26  own computer bag, said goodbye to Christopher Lippi, and left the classroom. When Robert

27  Sweeney called Plaintiff to accuse him of stealing Christopher Lippi's computer, he stated that

28  Christopher Lippi said that he thought he saw Plaintiff take his computer. When Plaintiff

EXHIBIT 3.
-COMPLAINT-
Page 50 of 241